

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

PAULETTE CHAPELLE

Debtor.

Case No. LA 04-26542 TD

Adv. Case No. LA 04-02655 TD

Chapter 7

PAULETTE CHAPELLE, an individual,

Plaintiff.

v.

EDUCATIONAL CREDIT MANAGEMENT CORPORATION,

Defendant.

MEMORANDUM OF DECISION AFTER TRIAL

DATE: July 7, 2005
TIME: 2:00 p.m.
PLACE: Courtroom 1345

**INTRODUCTION**

This adversary proceeding was brought by the Debtor, Paulette Chapelle (Ms. Chapelle), against Educational Credit Management Corporation (Defendant), to obtain a discharge of her student loan obligations pursuant to 11 U.S.C. § 523(a)(8). It was tried before me on July 7, 2005. The Defendant was

2019

represented by counsel and Ms. Chapelle appeared pro se.

A Stipulation of Admitted Facts and Exhibits for Trial was lodged by the parties and approved by my oral ruling at the time of trial, and later by an order entered on July 14, 2005. The additional evidence consisted of the testimony by Ms. Chapelle and the Defendant's vocational expert, Michael R. Hollis (Mr. Hollis) from Hollis and Associates, and the admitted documentary evidence. Both Ms. Chapelle and Mr. Hollis were cross-examined.

**STATEMENTS OF EVIDENTIARY FACT**

Ms. Chapelle received an undergraduate degree in 1979 and after several years in the workforce, decided to pursue a legal education with the help of the student loans which she now seeks to discharge. Prior to attending law school, Ms. Chapelle had 7 years experience as a paralegal, as well as marketing experience in real estate lending and financial services. Upon entering law school, Ms. Chapelle struggled personally and academically with her classes, but she persisted and graduated from Gonzaga School of Law in 1994, at the age of 41.

Since graduating, Ms. Chapelle has also struggled in her attempts to pass the California Bar exam, and has been unsuccessful to date. She took the bar exam in 1995, 1996, and 1997. She also studied for the bar two additional times but opted not to take the exam at those times. Ms. Chapelle has expended considerable time and effort in attempting to pass the bar, including taking multiple preparatory classes and quitting full-time employment as a paralegal in 2002 to study for the

exam.

Initially, Ms. Chapelle believed that her legal education would help her job prospects, but she has struggled to find permanent and satisfying employment as a paralegal since graduating 11 years ago. Since law school, Ms. Chapelle has an unstable work history consisting of largely temporary positions as a paralegal. Overall, she has held over 15 positions since 1987, was unemployed in 1999, and is currently experiencing difficulty securing full-time employment, though two of Ms. Chapelle's most recent positions included full-time employment as a paralegal during 2002 and 2003-2004. Ms. Chapelle also has some training and experience as a mediator in the Los Angeles Superior Court, but she has never received compensation for her services as a mediator.

Ms. Chapelle has been unable to secure full-time employment since March 2004, but is currently working as a part-time temporary paralegal for an expert witness. She has continued to actively search for employment during this time, including sending out numerous resumes, informing former co-workers of her need for employment, posting her resume on internet sites, as well as searching job postings in the paper and on the internet. She has not sought job counseling services during this time, pursued training in alternative career fields, or attended any job fairs. However, both Ms. Chapelle and Mr. Hollis testified that her J.D. degree might be off-putting to certain employers. Mr. Hollis further testified that Ms. Chapelle's unstable work

history also could contribute to her difficulty in securing employment.

Ms. Chapelle feels that she can no longer work as a paralegal or in the legal field, but she offers no positive alternative. She believes that her economic situation is not likely to improve, especially as she continues toward retirement age which she sees coming in 13 years. Ms. Chapelle is 52 years old, is unmarried and has no dependents, and further feels that her personal life, retirement plans, and marital prospects are adversely affected by her student loan obligation. Ms. Chapelle is clearly unsatisfied with her career as a paralegal and with the job opportunities, income, and standard of living that her legal education has provided for her.

Ms. Chapelle's income has averaged $23,384 annually since graduating from law school in 1994. More recently, she earned $31,531 in 2000, $31,955 in 2001, $25,752 in 2002, $46,232 in 2003, and $17,856 in 2004. Her monthly income, as reflected in schedule I of her bankruptcy petition, filed July 30, 2004, is $2,080 per month. This amount includes $1,680 in unemployment benefits and a $400 contribution from her boyfriend. However, Ms. Chapelle testified at trial that she no longer is receiving unemployment payments and currently has part-time temporary employment as a paralegal for an expert witness.

Ms. Chapelle's monthly expenses, as reflected in her bankruptcy schedule J, are $2,102.39 per month. In an effort to lower her expenses prior to her bankruptcy filing on July 30,

2004, Ms. Chapelle moved in with her boyfriend in May 2004. Her current rental contribution is $807.50 per month, for a one-bedroom apartment with a den. Prior to moving in with her boyfriend, Ms. Chapelle lived in a studio apartment in Marina del Rey, two buildings down from where she and her boyfriend currently reside. Her boyfriend previously resided in Florida and rented an apartment for $700 per month.

Ms. Chapelle's schedule J also reflects expenditures of $100 a month for recreation, $100 a month for clothing, and $338.64 per month for car payments. Ms. Chapelle's car is a 1997 model in good working condition, and her car loan will be paid off in October 2006.

Prior to her bankruptcy filing, Ms. Chapelle incurred additional expenses for two plane tickets to Idaho costing $476 total, purchased by Ms. Chapelle on her credit card in March 2004 for her boyfriend and her. Ms. Chapelle also incurred expenses during a trip to Arizona with a friend in October 2003. All of Ms. Chapelle's pre-petition credit card debt, in the amount of $44,903.62, has been discharged in this bankruptcy case.

No exact figure was established at trial as to the current balance of Ms. Chapelle's student loan obligation, however, her student loan debt was consolidated and reissued in the amount of $73,018 on April 12, 2002. (Exhibit A). No payments have been made against the debt, and interest continues to accrue. In her adversary proceeding, Ms. Chapelle now seeks a discharge of her

student loan obligations pursuant to § 523(a)(8), asserting that excepting such debt from a discharge imposes an "undue hardship" on her.

## DISCUSSION

### A. <u>The Ninth Circuit Standard for Determining Dischargeability of Student Loan Obligations</u>

A student loan obligation is presumptively nondischargeable in bankruptcy pursuant to § 523(a)(8). <u>Rifino v. United States of America</u>,(<u>In re Rifino</u>), 245 F.3d 1083, 1087 (9th Cir. 2001). The statute states, in pertinent part, "A discharge under section 727 . . . does not discharge an individual debtor from any debt--for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit . . . unless excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents." § 538(a)(8) (emphasis added). In <u>Pena</u>, The Ninth Circuit Court of Appeals adopted the three part test found in <u>Brunner</u> to determine dischargeability of student loans. <u>United Student Aid Funds v. Pena</u>,(<u>In re Pena</u>), 155 F.3d 1108, 1112 (9th Cir. 1998). The <u>Brunner</u> test is a widely accepted standard for determining the dischargeability of a student loan obligation. <u>See</u> <u>Id.</u> at 1111.

#### 1. Ms. Chapelle Failed to Establish the First Element of the <u>Brunner</u> Test

The evidence fails to establish by a preponderance of the evidence that Ms. Chapelle "cannot maintain, based on current

income and expenses, a 'minimal' standard of living for herself . . . if forced to repay the loans" as required by In re Pena, 155 F.3d at 1111 (citing Brunner v. New York State Higher Education Services Co., (In re Brunner), 46 B.R. 752 (S.D.N.Y. 1985), aff'd by 831 F.2d 395 (2d Cir. 1987)). Ms. Chapelle has demonstrated that she has a history and pattern of financial difficulty. Ms. Chapelle's expenses have clearly exceeded her income, as evidenced by her accumulated $44,903.62 of credit card debt and bankruptcy filing in July 2004. Her work history has been unstable and her income has fluctuated from year to year. Ms. Chapelle's recent difficulty in maintaining and securing full-time employment has exacerbated her economic situation.

However, in order to establish that she cannot maintain a minimal standard of living, Ms. Chapelle "must demonstrate more than simply tight finances. In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness. The proper inquiry is whether it would be 'unconscionable' to require the debtor to take steps to earn more income or reduce her expenses." Pennsylvania Higher Education Assistance Agency v. Birrane, (In re Birrane), 287 B.R. 490, 494 (9th Cir. BAP 2002) (citing United Student Aid Funds, Inc. v. Nascimento, (In re Nascimento), 241 B.R. 440, 445 (9th Cir. BAP 1999).

Ms. Chapelle has not taken sufficient steps to adjust her expenses to her financial situation. She has been living beyond

her means. Although Ms. Chapelle moved in with her boyfriend to share rental payments, she moved out of a studio apartment into a larger apartment with a den, and she chose to remain in a high rent district, while she was unemployed. Ms. Chapelle's lack of effort to find an apartment that is within her means suggests that she has not taken reasonable steps to lower her expenses.

Ms. Chapelle's schedule J includes $100 a month for recreation and $100 a month in clothing expenses. These expenses are modest but perhaps not reasonable given Ms. Chapelle's student loan obligation and her lack of full-time employment.

Ms. Chapelle's expenses also will decrease by $338.64 per month in October 2006, when she will no longer be making car payments. Ms. Chapelle's claim that she will need to buy a new car "someday" to avoid making repairs on her current vehicle, is speculative, unreasonable, and unconvincing. Ms. Chapelle has not claimed that her vehicle, which is a 1997 model, is inoperative or even experiencing any mechanical difficulties. Her sole contention is that her vehicle is old. Some courts have refused a discharge where the debtor's expense includes the purchase of a new car, finding that such an expense is a "self-imposed hardship." See In re Rifino, 245 F.3d at 1088 (citing Conner v. Illinois State Scholarship Commission, (In re Conner), 89 B.R. 744, 749 (Bankr. N.D. Ill. 1988)).

In addition to the reasonable steps Ms. Chapelle can take to reduce her expenses, she has the benefit of being completely

unburdened by credit card debt. In her chapter 7 case, Ms. Chapelle received a discharge, which included $44,903.62 in credit card debt. Aside from her necessary living expenses, Ms. Chapelle has no ongoing financial obligations apart from her student loan payments.

Just as Ms. Chapelle has not taken reasonable steps to lower her expenses, she has not taken all reasonable steps to increase her income. It is true that Ms. Chapelle has recently had difficulty obtaining full-time employment as a paralegal. However, she stated at trial that, although it is not her desire, she may be forced to take a minimum wage job. This may not be Ms. Chapelle's preference, but it is an entirely reasonable course of action in light of the fact that she has not secured full-time employment during the past 16 months. It is hardly "unconscionable" to ask Ms. Chapelle to take minimum wage employment if it will increase her income, albeit not to a level that will accommodate her desired standard of living.

Although the evidence is close on this issue given Ms. Chapelle's pattern of financial difficulty, especially her very limited current income, I find that taking all the facts and surrounding circumstances into consideration, Ms. Chapelle has not met her burden of proving by a preponderance of the evidence that it would be unconscionable to require her to earn more income or reduce her expenses.

**2. Ms. Chapelle Failed to Establish the Second Element of the <u>Brunner</u> Test**

The evidence fails to establish "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period," as required by <u>In re Pena</u>, 155 F.3d at 1111 (citing <u>In re Brunner</u>, 46 B.R. 752). It is clear that Ms. Chapelle has experienced personal and economic hardship and has demonstrated an inability to support herself during periods of the repayment period. However, the evidence does not show that Ms. Chapelle's difficulties are likely to persist, or that she is faced by "additional circumstances" that she cannot overcome or are beyond her reasonable control. As the court stated in <u>Birrane</u>,

> The 'additional circumstances' prong of the <u>Brunner</u> test 'is intended to effect 'the clear congressional intent exhibited in § 523(a)(8) to make the discharge of student loans more difficult than that of nonexcepted debt.' . . . There must be more evidence that the debtor's 'road to recovery is obstructed by the type of barrier that would lead [the court] to believe he will be unable to pay for several years.' . . . Examples of such barriers may include psychiatric problems, lack of usable job skills and severely limited education.

<u>Birrane</u>, 207 B.R. at 497 (citations omitted). There is no such evidence here. On the contrary, the evidence shows that Ms. Chapelle is healthy, well-educated, intelligent, has no dependents, and faces no "insurmountable" barriers such as mental or physical problems, medical expenses, or a "severely limited education." <u>In re Birrane</u>, 287 B.R. at 498.

Ms. Chapelle argued at trial that her age and the amount of

the loan coupled with the repayment period constitute "additional circumstances". However, Ms. Chapelle chose to take out a student loan, later in life, with a 30-year repayment period. Ms. Chapelle's age does not constitute an "additional circumstance," especially when she is healthy and does not suffer from any age-related illnesses that affect her ability to work. Ms. Chapelle has at least 13 years before she is eligible for retirement benefits (Exhibit I), and therefore, has over a decade to remain an active and productive member of the work force.

Ms. Chapelle also presented evidence that she has been unable to obtain full-time employment since March of 2004, despite her best efforts. Ms. Chapelle believes that her inability to find employment is partially attributable to the fact that some employers are put-off by her law degree. She believes that her law degree has not been of the value to her that she anticipated. However, as the district court stated in Brunner, it would be both "improper" and "antithetical to the spirit of the guaranteed loan program" for me to consider the value of Ms. Chapelle's legal education in determining whether or not to allow a discharge of her loan obligation. See In re Brunner, 46 B.R. at 756, fn. 3.

In addition, Ms. Chapelle has failed to prove that her lack of full-time employment is likely to "extend for a significant portion of the repayment period of the loan." Id. at 755. Although Ms. Chapelle has faced considerable difficulty in

trying to secure full-time employment, § 523(a)(8) requires more than a showing of temporary difficulty in obtaining work. Id. at 757.

The Defendant's vocational expert, Mr. Hollis, testified that Ms. Chapelle's job prospects are good and that job opportunities in the paralegal field are growing. He noted that Ms. Chapelle's background qualifies her as "experienced," and that there is a particularly high demand for litigation paralegals, which is Ms. Chapelle's area of expertise. Mr. Hollis testified to his job search study that revealed over 100 openings for paralegal positions in the Los Angeles area. (Exhibit I). According to Mr. Hollis, Ms. Chapelle's best employment prospects and the highest and best use of her skills are as a paralegal. Ms. Chapelle's assertion that she can no longer work as a paralegal is not supported by Mr. Hollis' testimony, or any other evidence that she is either mentally or physically incapable of working as a paralegal. In fact, Ms. Chapelle is currently working as a part-time temporary paralegal.

Mr. Hollis also testified that there are a number of other jobs that Ms. Chapelle's skills would qualify her for outside of the paralegal field. Despite Ms. Chapelle's contention that she cannot succeed as a paralegal, she failed to show that she has adequately pursued alternative career paths or training since she first began working as a paralegal 18 years ago. Ms. Chapelle also has not sought any job counseling services or

attended any job fairs to assist her during the current 16-month period in which she has been seeking full-time employment unsuccessfully. Further, as noted above, Ms. Chapelle has demonstrated a resistant attitude toward working in positions that might pay less or that might offer wages below her desired income level.

Although Ms. Chapelle's recent efforts to find work as a full-time paralegal have been fruitless thus far, her present difficulty in securing full-time employment does not establish that this difficulty will persist. As the district court stated in Brunner, Ms. Chapelle is also "healthy, presumably intelligent, and a well-educated woman . . . She has no other dependents or any other extraordinary burdens which would impair her finding other work." In re Brunner, 467 B.R. at 757.

Mr. Hollis concluded from his examination of the evidence that Ms. Chapelle could obtain full-time employment within three to six months if she made a more concerted and focused effort. (Exhibit I). The evidence also shows that Ms. Chapelle was recently able to obtain employment as a full-time paralegal in 2002 and then again in 2003. Ms. Chapelle's temporary difficulty in securing employment is insufficient to establish that her current period of underemployment will continue for a significant portion of the repayment period.

**3. Ms. Chapelle Failed to Establish the Third Element of the Brunner Test**

The evidence fails to establish that Ms. Chapelle made

"good faith efforts" to repay her loan obligation, as required under Brunner. In re Pena, 155 F.3d at 1111 (citing In re Brunner, 46 B.R. 752). Two factors used to evaluate good faith are the debtor's efforts to (1) "obtain employment, maximize income, and minimize expenses," and (2) "to negotiate a repayment plan." Educational Credit Management Corporation v. Mason, (In re Mason), 315 B.R. 554, 563 (9th Cir. BAP 2002) (citing In re Birrane, 287 B.R. at 499-500).

I conclude that the evidence establishes that Ms. Chapelle has made diligent efforts to obtain full-time work as a paralegal during the past 16 months. But the record also establishes that in 2002 Ms. Chapelle quit full-time employment to study for the bar exam, which she then opted not to take because, as she testified, she "knew she would fail." Still, she chose to give up full-time employment and voluntarily dispense with her primary source of income. Further, as noted above, Ms. Chapelle has demonstrated an unwillingness to consider certain employment opportunities because they provide less income than her previous jobs.

Ms. Chapelle presented evidence that she has lowered her expenses by moving in with her boyfriend to share rental payments since May 2004. However, Ms. Chapelle chose to remain living in the high rent district in which she had been living and made no efforts to find an apartment in a lower rent district. In fact, Ms. Chapelle moved out of a studio apartment into a larger apartment. Ms. Chapelle's share of the rental

payment is $807.50 per month, which is $107.50 more than what she testified was her boyfriend's entire rental payment in Florida. I conclude that it would not be unreasonable for Ms. Chapelle to attempt to lessen her expenses by finding an apartment in a rental district that is more reasonable given her current financial situation.

Although Ms. Chapelle's current financial situation might prevent her from making loan payments at the present time, she has made no payments on her loan, even during periods where she was employed full-time. Ms. Chapelle's bankruptcy petition reflects that she earned $42,728 in income in 2003, which was $19,015 more than her prior year's income, yet she made no payments on the loan during this period of increased income.

Also during this time, Ms. Chapelle used her available income to pay for her and her boyfriend's tickets to Idaho in 2003, and to incur expenses during a trip to Arizona with a friend. These expenditures were unreasonable in relation to her non-payment of her student loan obligation.

Ms. Chapelle has also abjectly refused to take advantage of available repayment options. Although Ms. Chapelle has taken advantage of forebearances and deferments on her student loan payments, she has declined to consider enrolling in the Ford Program, of which she was aware before trial. One of the options under the Ford Program is an Income Contingent Repayment Plan (ICRP), which calculates payments based on the borrower's income and allows her to pay nothing during periods where her

income falls below the poverty line. (Exhibit G). "A debtor's effort--or lack thereof--to negotiate a repayment plan is an important indicator of good faith." In re Birrane, 287 B.R. at 499 (citing United States Department of Education v. Wallace, (In re Wallace), 259 B.R. 170, 185 (C.D. Cal. 2000).

In addressing her refusal to take part in the Ford Program, Ms. Chapelle testified at trial that the Ford Program is "a fiction" for her and that it simply results in a "new debt" while the Defendant gets paid off. This argument is neither supported by the evidence nor convincing. The ICRP option under the Ford Program would allow Ms. Chapelle to pay off her already existing loan obligation with fluctuating monthly payments based on her income. (Exhibit C). The Court in Birrane found that the good-faith prong had not been met, in part because the debtor "failed to take any steps towards renegotiating a repayment scheduled under the ICRP program." In re Birrane, 287 B.R. at 500.

Ms. Chapelle has made no payments on her loan obligation, has failed to show that she maximized her income and minimized her expenses, and has refused flexible payment options available to her. Therefore, I conclude that Ms. Chapelle has failed to establish that she made a good-faith effort to repay her loan obligation.

**CONCLUSION**

In order to receive a discharge of her student loan obligation, it is the plaintiff's burden to establish each

element of the Brunner test by a preponderance of the evidence. In re Pena, 155 F.3d at 1111 (citing In re Brunner, 46 B.R. 752). Ms. Chapelle has failed to meet this burden.

Although the evidence shows that Ms. Chapelle is currently struggling to attempt to repay her loan obligation, and is undoubtedly experiencing personal hardship, this is insufficient to meet her burden under the high standard that Congress has instituted. "The existence of the adjective 'undue' [in § 523(a)(8)] indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans . . . ." In re Pena, 155 F.3d at 1111 (citing In re Brunner, 46 B.R. 752).

It is unfortunate that Ms. Chapelle pursued a legal education and now feels burdened by her debt and no longer desires to pursue a career in her chosen field. However, where both Congress and the courts have set a clear and high threshold for determining the dischargeability of student loans, Ms. Chapelle is not entitled to a discharge under § 523(a)(8) because she has not demonstrated that she has taken adequate steps to deal appropriately and realistically with her student loan obligation.

    Judgment will be entered in favor of the Defendant, Educational Credit Management Corporation. Defendant's counsel is instructed to prepare and lodge an appropriate judgment and notice of entry.

SO ORDERED.

DATED: July 22, 2005

THOMAS B. DONOVAN
United States Bankruptcy Judge

## NOTICE OF ENTRY OF JUDGMENT OR ORDER AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1. You are hereby notified that a judgment or order entitled:

**MEMORANDUM OF DECISION AFTER TRIAL** was entered on JUL 25 2005.

2. I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on JUL 25 2005

Plaintiff
Paulette Ann Chapelle
P.O. Box 10484
Marina Del Rey, CA 90295

Chapter 7 Trustee
John Menchaca
835 Wilshire Boulevard, Suite 300
Los Angeles, CA 90017

Attorney for Defendant
Scott A. Schiff
Soukup and Schiff, LLP
1880 Century Park East, Suite 1108
Los Angeles, CA 90067

Office of the U.S. Trustee
Office of the U. S. Trustee
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

Dated: JUL 25 2005

Clerk